It's now in session. Please be seated. Good morning and welcome to the Chambers Courthouse here in Pasadena. It's a pleasure to be here. We have a number of cases set for oral argument today, and let's begin with the first one, which is the People of the State of California v. Express Scripts, Inc. If parties are ready, you may come forward. Thank you, Your Honor, and may it please the Court, Chris Michel arguing in support of Appellants, Express Scripts, and Optum. I would like to reserve two minutes of time for rebuttal. The question before the Court today is not whether the county's suit may proceed, but where it will be decided. Because the suit at least relates to defendants' conduct under federal officers, it belongs in federal court. The district court's remand order and denial of a stay pending appeal rest on three errors warranting reversal. First, as the county all but concedes, the district court erred in holding that defendants' administration of the prescription drug components of military, veterans, and federal employee health plans is not action under a federal officer. Second, as the First Circuit recently explained, and as a prior panel of this court recognized, the district court erred in holding that the county's disclaimer eliminates the basis for removal. And third, as the Fourth Circuit recently confirmed, the district court's denial of a stay of the remand order pending appeal is also an error. This court should accordingly enter a stay pending appeal and then reverse the remand order. Let's talk about that because you do highlight what happened here in the First Circuit. As you know, the other case is a memorandum disposition, the one out of our court. That's correct, Your Honor. And I'm happy to talk about that, but let's talk about things that might be more persuasive authority. And on the First Circuit case, it seems like those were insulin pricing cases and could be considered analytically distinct from what we have going on here. Do you want to talk about this? Yes, Your Honor. There are some analytical distinctions, but there's a core analytical similarity, and that is one of the defendants in that case was Caremark PBM. And the critical element of the First Circuit's holding was that Caremark PBM, in negotiating rebates for FEHB, that's Federal Employee Health Benefit plans, and private plans, negotiated in what the First Circuit called one fell swoop. In other words, there's one negotiation between the PBM and the drug makers. The drug maker will say we'll give you a 20% discount if the drug ends up in this part of the formulary and a 10% discount if it ends up in the other part of the formulary. And because your time is limited, I think I know where you're going, but I want to ask the question. It seems like because the single negotiated price of insulin is inexplicably intertwined with those defendants' federal and non-federal business portfolios. It seems like that was the case there. Where here it appears the opioid public nuisance claim is essentially a question of volume and sufficiency of the evidence. Am I right on that? Well, I think a couple of points. First, I do think the public nuisance aspect of the claim here makes this, with respect, an even easier case than the First Circuit case. But I don't want to lose the First Circuit point, which is that the same conduct, the same indivisible conduct by PBMs that led the First Circuit to hold that the disclaimer was not effective is equally applicable here. It's the same conduct by the PBMs in this case negotiating prices with, negotiating rebates with drug manufacturers on behalf of both their private clients and their federal employee health benefit land clients at the same time. And if you look at- Counselor, let me ask, you know, has the landscape changed with Royal Canine where the Supreme Court really emphasized that plaintiffs are the master of their complaint and to credit a plaintiff's attempt to remove federal, colorable federal claims from their complaint? And here the disclaimer is very explicit in many different ways of removing that causal connection to federal officer jurisdiction. Is it your view that plaintiffs can't excise federal claims here or that they just weren't specific enough? I think ultimately, as Judge Ikuto said in her concurrence here and as the First Circuit held, in this kind of claim, a claim that is based on conduct that's conducted indivisibly for private and federal plans, there's no disclaimer that will ultimately prevail. Because plaintiffs aren't saying this. That's your contention. Plaintiffs are saying this is not a federal case, and there's a whole body of non-federal-related contracts and work that defendants engage in that are not related to the federal side. So I'm still struggling to understand why it's inextricable. Sure. A few responses to that. First, of course, as this Court has said, when you consider a remand, a removal motion, a removal and a motion to remand, you take the defendant's theory of the case. I think the Lady case, among others, says that, not the plaintiff's theory of the case. And that's in part because the federal officer remand statute is to be construed broadly. And here, regardless of what the plaintiffs say, the record demonstrates that these rebate negotiations and other aspects, including formulary development, utilization management, and the pharmacy network negotiations themselves, as Pages 128 through 130 of the Joint Excerpts of Records demonstrate, are conducted indivisibly for private and federal plans alike. So in that context, when you look at the factual record as it comes to this Court on our notice of removal, and the Court affords the presumption in favor of removal that applies in this distinctive context of federal officer removal, the disclaimer is ultimately ineffective. I think the First Circuit lays that out powerfully in its opinion. And there's no disclaimer in your view that could ever be effective if your response is as it is? So I think the one thing I could perhaps come up with is that if they disclaimed all reliance on, you know, the PBM's rebate negotiations and formulary development and pharmacy network developments, the things I was just telling Judge Sanchez are conducted indivisibly, perhaps they would disclaim that. But I do think that would mean disclaiming their whole case. Right. There would be nothing. I agree with that. And that just goes, I think, fundamentally, Judge Thomas, that illustrates that this kind of case, this distinctive kind of case that's brought against a federal contractor for conduct conducted indivisibly for federal and non-federal plans belongs in federal court. That's not a broad holding. It's a holding that will apply to this narrow category of cases, but it squares with what Congress was trying to get at with the federal officer removal statute, as this Court has said. But is it the Leite or Leite case? I'm not sure how to pronounce it. Say courts have to credit defendants' theory of the case, not that the courts have to take the defendants' theory of the case as true per se. I think that's right. I think credit the theory of the case. But I think here, especially with that sort of extra thumb on the scale, the allegations are plenty sufficient for the reason the First Circuit identified to bring it into, properly into federal court. Just to go back to a question you asked earlier, Chief Judge McGee, the public nuisance aspect of this claim, I think, is important, and that's, in our view, in a fortiae basis from the First Circuit's decision. The nature of a public nuisance under California law is that it has to affect the collective public. It has to affect the collective right. And by its nature, when you start to disclaim some of the collective, it's no longer collective. It would be as if in the old nuisance cases where a landowner had a tree blocking the road, the county came in and brought a nuisance claim and said, well, we're going to disclaim the trunk of the tree. You can't disclaim part of a public nuisance in that way. And I think the Fourth Circuit's Arlington County case, although it didn't involve an explicit disclaimer, is persuasive authority on that point as well. So in your view with Leyte, I think we've pronounced it correctly, even if we credit your claim, defendants still have to present competent evidence to support the removal jurisdiction. Where in the record does it show that it's the exact same rebates that are being negotiated across the board? So I think the best evidence in the record is at the second excerpts of Record Volume 128 through 130. That's a declaration from Mr. Jenkins, who is an Express Scripts employee. He talks some about rebate negotiations there. He talks more about the pharmacy network, which is another sufficient basis to support the removal. And he explains that when PBMs negotiate the network of pharmacies, they negotiate on behalf of both TriCare, for example, a federal program, and their private plans alike. And one point that I think has been implicit in this discussion that's important is that any one basis for federal officer removal is enough to justify removal of the whole case. The First Circuit makes that point as well. So although I think there are at least three or four independent bases, you would only have to find one of them. I think the easiest way to do it would be to rely on the rebates in the same way the First Circuit did. I think another very straightforward one would be to rely on the pharmacy networks that I just described. I'd like to reserve the rest of my time for rebuttal, if I could. Okay. Thank you. May it please the Court. Louis Bograd for Plaintiffs' Appellees, the people of California, and my colleague Andrea Ross from the County Counsel's Office couldn't be with us here this morning but is watching on attending by video feed.  I'm gratified by the questions the panel was asking my opposing counsel because I think you've highlighted the flaws in the defendant's argument. The defendant's position essentially is that PBMs can always take cases to federal court. I think the paragraph that crystallized this best was actually in the district court decision that preceded this court's memorandum opinion in the Caremark PCS case. The district court said that in that case it was Caremark's and Eli Lilly's argument, when carried to its logical end, assumes that any organization that contracts with the government, including for services available to private organizations, may always take advantage of federal officer removal if any portion of the work it performs is undertaken on behalf of both private and government organizations, even if the government services are not at issue. That's their position, that they, uniquely among all American defendants, because they choose to negotiate jointly, may always take cases to federal court, even where plaintiffs quite explicitly disclaim any reliance on the federal aspects of their work. I'm sorry, so do you agree with the First Circuit's decision in that particular case? And do you just say that that doesn't apply here, or I'm trying to figure out what your position is? Well, Your Honor, I'd say both. Since I argued that case and lost, I certainly don't agree with the decision. I do think the distinction between insulin pricing and the opiate crisis is an important distinction and may make the cases distinguishable. But I also think you have all already recognized the flaw in the First Circuit's logic, which is that they repeatedly say we must accept the defendant's theory of the case. And that can't be right. I mean, the theory, it has to be at least something like Iqbal Twombly, right? I mean, there has to be a plausible assertion that the governmental conduct of the defendant is involved. And it isn't here. What about counsel's argument that it's the exact same rebate plan that's being negotiated across the board between both federal and non-federal contracts? Well, first, Your Honor, I think you have to distinguish among different federal work. Because, for instance, the Defense Department insists on a specific formulary for its TRICARE work. It's not negotiated jointly because the Defense Department tells the PBMs what they want in the formula. But the point is that the conducted issue in the litigation is the PBMs' role in over-promoting, over-distributing, over-contributing to the release of opioids to clients of private health plans. I mean, that's the essential work. As my colleague who argued this case in the district court pointed out, we could prove our claim without ever once mentioning the defendant's conduct with the federal government. We would show that there is a public nuisance in Los Angeles County caused by the over-prescription and over-dispensing of opioids. You would show that there is a public nuisance by the over-prescription of opioids by everyone else but federal agencies or under federal law? No, Your Honor, we're not saying there is no bad conduct taking place in connection with government health care programs. We have simply chosen to excise that portion of any bad conduct from this litigation. It is exactly the same. You've all been – followed the national – No, but I'm just saying you wouldn't rely on that. We wouldn't rely on it at all, and we would never even have to mention it. It would be as if it – you know, the opioid cases in the national opioid litigation have been tried, defendant group by defendant group, manufacturers, distributors, pharmacies. And I think that's what I'm wrestling with. Can it be excised out? We think it can, Your Honor. And your friend across the aisle says it can't. He certainly does. And I'm looking – is it the type of case that we're dealing with here? Because it seems like the insulin prices, when you're looking to have to make a decision on the pricing, you have to look at all the pricings. It may be hard to excise out the federal pricing. Here, this seems a little bit different, but I'm trying to figure out what your theory is. Well, I agree, Your Honor. Our theory is that it's different, that the issue here has to do with opioids that were actually dispensed – prescribed and actually dispensed in Los Angeles County. Those opioids are associated with particular prescriptions written under – in connection with particular health care programs. Which have nothing to do with any federal – Well, there's some – I mean, there were opioid prescriptions written for federal health care programs. There were opioid prescriptions written for non-federal programs. So long as we limit our proof to the role of the PBMs in facilitating the over-promotion, over-distribution, over-prescription of opioids in the non-federal market, those are distinct. The records tell you who's – which prescription came from which health care plan. They can be segregated. Can you segregate the rebate negotiation part from the over-prescription of opioids? Or are they linked? They are linked only in the sense that the defendants chose to have the conversations jointly with the manufacturers. But that was a choice they made. And it is not a choice that was mandated. Indeed, I want to hop ahead just a bit to the issue of colorable federal defenses. Because there are multiple pieces that they need to establish in order to be able to bring such a claim. And they have no plausible federal defenses here. They've asserted two. Federal preemption under FEBA and TRICARE. And, of course, there can be – first off, they have not identified a single contradiction, a conflict between the requirements of FEBA and TRICARE and the plaintiff's public nuisance claim. But more importantly, if we're only talking about non-federal prescriptions, there's no basis on which to say that their conduct in the non-federal market is preempted by the requirements of FEBA and TRICARE. And they also assert a government contractor immunity defense. But, again, there can be no government contractor immunity for both – for the same two reasons. One, they have not identified anything that the government compelled them to do that provides a basis for a defense to our claims. And, two, even if they could, that would only be something the government compelled them to do with regard to the non – to the federal portion of their work, not to the non-federal portion of their work. To go back to Judge Merguia's question about whether you could actually segregate it out in a court, if you are not relying on the federal contract disbursements but you're still – but the theory is still community-wide impact, does a court have to try to somehow disentangle the impact to the community based on federal contracts versus not? Or how would you go about doing that otherwise? This is the point I was trying to make a couple of minutes ago, Your Honor. The – it is as if – there are many, many defendants, many, many companies who are responsible for the opioid crisis. Many of them have been sued. Many of them have settled. They have been sued frequently in separate litigations. The test for public nuisance under California law, as it is in most states and under the restatement, is is there an unreasonable interference with public rights? And we can prove that without any discussion of who's done anything. And then was the defendant's conduct a substantial contributing factor in bringing about that public nuisance, that interference with public rights? And we can prove that based solely on the defendant's non-federal conduct, leaving their federal conduct as if their federal work was an entirely separate defendant who has not been brought before the court and, therefore, their work in that context is not relevant to the claim. We would never have to mention their federal work in the litigation, and we prove our claims without it. The substantial contribution analysis and then issues potentially of apportionment to non-party defendants, those become complicated questions, but the opioid litigation has consistently drawn that distinction and focused on the conduct just of the defendant before the court, which in this case is the non-federal portion of the PBM's work. I see my time has expired. Do you have another question? Just one last quick question. The district court did not address the colorable federal defenses, did it? It just relied solely on the disclaimer, no causal connection. Is that right? It's a little unclear, Your Honor. They found the disclaimer was effective. I don't think they necessarily parsed, that the district court parsed the various elements of the test. It found that because we had disclaimed the federal work, they couldn't meet any of the requirements. But you're right. There is no issue-by-issue analysis, although those issues had been briefed and were before the court. I just have one final, I think, question. I take it you won't seek to try to amend your complaint in L.A. Superior Court to include the defendant's federal client business portfolios. I assume that you will not try to amend your complaint. Of course not, Your Honor. I just wanted to be clear. And, indeed, I can't remember if it was in this case or some other case. One case in this, PBMs have been bringing these appeals all across the country. At least one court has said they think there would be a strong argument for judicial estoppel if we were to try and change our position. And, of course, if we were to amend the complaint, that would give them a basis to re-remove. I have not spoken at all about Coinbase. I know my time is up. It is up. Thank you. Thank you. Thank you, Your Honor. Just a few brief points in rebuttal. The federal officer removal statute requires or supports removal where there is a claim for or relating to conduct under a federal officer. The claims in this case, if you look at page 65 of the excerpts of records are for the PBMs' core conduct like negotiating with manufacturers and negotiating with pharmacies. That appears again and again. But if I can ask you, it seems like the unfair competition claims against the insulin price says targeted the prices themselves. Here, the people are not targeting the prices of opioids on the formulas or the formularies. It seems like they're bringing a public nuisance claim against the dispensing practices and over-prescription of opioids. Isn't there a clear distinction? Chief Judge McGee, I think this is a critically important point. If you look at the paragraph I just cited, it's the opening paragraph of the complaint. It refers expressly to the rebate negotiations and the prices. That is absolutely part of the claim. We're trying to figure out why the rebate price is significant here because I'm not sure I see what the rebate price has to do with whether the PBMs improperly dispensed the opioids that allegedly contributed to the epidemic. It seems like the plaintiff's allegations are that the pharmacies didn't adequately halt dispensing of improper opioids, over-dispensing opioids, and canceling the prescriptions. So maybe you can address that. Sure, and I think this comes back to the exchange I had with Judge Sanchez earlier. The plaintiffs do indeed allege all the things you just noted, but they also clearly and repeatedly allege reliance on the rebate pricing. It gets $65, $71, $78, $79, $100, $121. Those are all pages in the excerpts of records where they recognize that in the complaint. That's, of course, the plaintiff's allegations in this case. We'll dispute those on the merits, but that's what they have brought against us, and that is what we're entitled to rely on when we're moving to federal court. So I do think the plaintiff ultimately is asking you to create a circuit split with the First Circuit based on its reasoning and with the Fourth Circuit as well. And I guess if I had 10 seconds, I would say I do think the Fourth Circuit persuasively explained why a stay is required here, and we hope this court would do the same. Thank you very much. Thank you. Thank you both for your helpful arguments here today, Michelle and Mr. Bograd. The case of the people of the State of California v. Express Scripps and Express Scripps Administrators is submitted.
judges: MURGUIA, SANCHEZ, THOMAS